# IN THE UNITED STATES COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL DIVISION |
| VS. | : | No. 2:21-cr-0200-ER-1 |
| | : | |
| | : | |
| | : | |
| RAPHAEL ROSS | : | |

**MOTION TO SUPPRESS PHYSICAL EVIDENCE PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 12(b)(3)(c)**

Comes now, the Defendant, Raphael Ross, by and through his counsel, Guy R. Sciolla, Esquire, and moves this Honorable Court to suppress all physical evidence seized from his car which he was driving, on January 15, 2021, in the Eastern District of Pennsylvania and submits the following in support thereof.

I. **HISTORY**

Raphael Ross was stopped while driving his legally registered and insured car at 8:16 pm on January 15, 2021. He was alone.

The traffic stop occurred as a result of an alleged violation of section 4524-E of the Pennsylvania Motor Vehicle code, which addresses the level of permissible tint allowed on vehicle windows.

Philadelphia Police Officer John Smart stopped defendant's car and approached the driver's side while his partner, Officer Danielle Foreman, approached the passenger side.

1

Officer Smart requested defendant's license, registration, and insurance proof. Defendant provided the registration and insurance proof, but, after checking his coat, which was lying on the front passenger seat, could not find his wallet which contained his license. Defendant checked his coat for the wallet at least twice.

Defendant advised Officer Smart that he must have left his wallet at home. Smart returned to his patrol car to check on the documentation provided, and, while there, verified the ownership of the car and the validity of defendant's license which was found to be current. Also, Smart requested defendant's address and social security number which defendant provided. Smart also asked if defendant possessed a gun.

Officer Smart returned to the defendant's car and informed him that all of the documentation was in order.

Defendant continued to search for his license, as he had prior to his talking to the officer. Smart also verified that defendant had no outstanding warrants or traffic tickets. While at the car, Smart asked defendant if he had been "locked up" before, to which defendant responded, "yes." Defendant was asked if he had any identification with his picture, (N.B. Officer Smart would have seen defendant's picture when he accessed the drive's license information on his onboard computer.)

At this time, defendant was on the pone with his girlfriend, Tamisha Harrington, who heard the entire exchange between defendant and Officer Smart. She heard Smart order defendant to exit the car and to "hang up right now," which he did. Before exiting, defendant asked if he could put his coat on, since it was cold, to which Officer Smart said no. Smart took defendant's car keys and, after getting him out of the car, told him to turn around and to place his hands on the car roof. Defendant complied and immediately was patted down and searched. Officer Smart reached into all of

defendant's pockets and into the crotch area inside his pants outside his underwear. He found $2,600.00 in United States currency and questioned defendant about it. Defendant told Smart that the money was for his grandfather's funeral, and he was taking it to his grandmother. His grandfather had died earlier that day (i.e. January 15, 2021.) Nothing else was found in his clothing. However, Smart asked him about his watch and asked him how could he afford it. Defendant advised Smart that he owned two healthcare businesses. Officer Smart then placed defendant into his patrol car from which he was not permitted to leave. Thereafter, Smart returned to defendant's car to search it. Seeing no evidence in plain view, Smart opened the door to the console after entering the car. Again, no contraband or gun was observed. Smart alleges he noticed that the side panel of the interior of the console was "manipulated." He then removed an interior panel inside the console and then he observed a knotted white plastic bag and the bottom of a magazine plate to a firearm.

There items could not be seen until the console was opened and an interior panel was removed.

II. **ISSUE AND LAW**

> WAS THE WARRANTLESS SEARCH OF ROSS'S VEHICLE
> IN VIOLATION OF THE FOURTH AMENDMENT TO THE
> UNITED STATES?

The stopping of a vehicle and detention of its occupants constitutes a seizure under the Fourth Amendment. U.S. v. Foreman, 369 F.3d 776 (4th Cir. 2004); Whren v. United States, 517 U.S. 806, 809-810, 116 S. Ct. 1769 (1996); United States v. Mosley, 454 F.3d 249, 253 (3d Cir. 2006); Torry v. Ohio, 329 U.S. 1, 885 S.Crt. 1868, (1968).

A traffic stop is lawful under the Fourth Amendment where police observe a traffic code violation. United States v. Bonner, 353 F.3d 213, 216 (3rd Cir. 2006.)

The <u>Terry</u> reasonable suspicion standard applies to routine traffic stops. <u>United States v. Delfin-Colina</u>, 464 F. 3d 392, 397 (3rd Cir. 2006).

In the instant case, the police contend excessive tint on the defendant's vehicle was the reason for this stop. Ostensibly their purpose in stopping defendant was to issue a citation for this allegedly apparent traffic code violation.

As stated above, the police obtained proof of the necessary documentation regarding registration and proof of insurance and of a valid driver's license.

At this point, the "mission" as to the purpose of the traffic stop was concluded. Officer Smart, after completing his verification, returned to the driver side of defendant's car and began questioning him. Defendant was asked had he ever been locked up, to which the defendant responded truthfully. Obviously, Smart already knew the answer to the question and was watching to determine if the defendant would lie. This question, as well as those relating to the money defendant had and the watch he was wearing had nothing to do with the mission of the traffic stop.

Officer Smart already had performed a record check even before attempting to complete the traffic stop. His intent was to conduct a further investigation into general criminal activity without a basis on which to formulate reasonable suspicion. None of this, therefore, was related to the objective of the stop.

Obviously, it is contended that the seizure at this point became unlawful because there was no reasonable suspicion justifying prolonging the traffic stop. <u>Rodriguez v. United States</u>, 135 S. Ct. 1609 (2015).

The "Rodriguez" moment had passed and the continuation of an interrogation of the defendant beyond the traffic related documents, or lack thereof, was designed to generate a basis of reasonable suspicion. Asking the defendant if he had ever been

4

arrested was followed by questions regarding his watch and money. These questions clearly are not in furtherance of completing the traffic stop and its objectives.

The suggestion that he was nervous and twice reached for his coat, ostensibly looking for license, does not form an objective basis for reasonable suspicion for criminal activity. Questions unrelated to defendant's ability to operate his car are not tied to the alleged traffic violation.

Nervousness is not a basis for implying criminal conduct is being concealed, nor is reaching for his coat to look for his driver's license.

As stated in <u>United States v. West</u>, 103 F App'x 460, 462 (3d Cir. 2004), ("while nervous behavior clearly is relevant in the assessment of whether there was reasonable suspicion, it is not necessarily enough, standing alone.") "It is not unusual for drivers, even innocent ones, to be nervous when stopped by police officers." <u>Johnson v. Campbell</u>, 332 F. 3d 199, 209 (3d Cir. 2003). Even unprovoked flight, not relevant here, alone is not enough to justify a stop <u>United States v. Gonzalez</u>, 328 F. 3d 755 (5th Cir. 2003).

In this case, the police sought information completely unrelated to their mission and for the sole purpose of attempting to establish reasonable suspicion to justify the extension of the traffic stop. Why or how would the questions put to the defendant, regarding past criminal record, his watch, or his money be related to the traffic stop?

Upon Officer Smart's return to the defendant's car a citation should have been issued. For purposes of <u>Rodriguez</u>, supra, the mission was accomplished. Instead, defendant was questioned, ordered out of the car, had his car keys taken, frisked, searched, and placed in the rear of the police car. Also, he was ordered to hang up his phone and terminate his conversation with his girlfriend, Tamisha Harrington.

Subsequently, Smart entered the defendant's car for the sole purpose to uncover possible criminal activity. This search was not based on any reasonable suspicion. The objects discovered were not in plain view and were seized only after the console door was opened and the interior compartment was disassembled. The so-called panel irregularity, which the defendant does not concede, was allegedly observed after the console was unlawfully opened.

III. **CONCLUSION**

As stated in Rodriguez, supra, once all traffic related tasks are completed any or some investigation into other crimes, in contrast, detours from the officer's traffic control mission. There is no extended time to pursue an unrelated criminal investigation. Any further unrelated traffic inquiries are "unlawful." Illinois v. Caballes, 543 U.S. 409, 407 (2005); Arizona v. Johnson, 555 U.S. 323, 330 (2009).

Clearly, in this case the prolonged investigation was unreasonable and in violation of the defendant's Fourth Amendment right to privacy. Extending a mere traffic stop into a criminal investigation without reasonable suspicion is the exact conduct proscribed by the United States Constitution.

For all of the above, defendant respectfully requests all physical evidence be suppressed.

                                    Respectfully submitted:

                                    /s/     Guy R. Sciolla
                                  GUY R. SCIOLLA, ESQUIRE
                                  Attorney for RAPHAEL ROSS
                                  Identification No. 19051
                                  100 South Broad Street, Suite 1910
                                  (p) (215) 972-1544
                                  (f)  (215) 972-1545

Date: February 4, 2022

CERTIFICATE OF SERVICE

    I certify that a copy of the Defendant's Motion to Suppress Physical Evidence and Exclude Its Use at Trial was served via electronic mail on David Daniels Metcalf, Assistant United States Attorney.

                                            /s/   Guy R. Sciolla
                                     Attorney for Raphael Ross

Date: February 4, 2022